# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANNA MARIE PITTMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 14-CV-0728-CVE-FHM |
| | ) |
| AMERICAN AIRLINES, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the court is defendant's motion to dismiss (Dkt. # 13) and brief in support. Pursuant to Fed. R. Civ. P. 12(b)(6), defendant seeks to dismiss each of plaintiff's six claims--status-based discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. (Title VII); racial discrimination under 42 U.S.C. § 1981; status-based discrimination under the Oklahoma Anti-Discrimination Act, OKLA. STAT. tit. 25, § 1101 et seq. (OADA); retaliation under § 1981; failure to accommodate under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (ADA); and retaliation under the ADA--as being waived by a valid and enforceable settlement agreement (the agreement). Dkt. # 13, at 1. Defendant also argues that plaintiff's hostile work environment "claim" of discrimination should be dismissed for failure to state a claim. Id. at 7 n.5. Plaintiff responds that the agreement is retaliatory and, for that reason, unenforceable. Dkt. # 18, at 1. She concedes that her hostile work environment theory of liability is untenable, but she asserts that she will prove her discrimination claims under a disparate treatment theory of liability. Id. at 1 n.1. Defendant has filed a reply. Dkt. # 26.

# I.

Defendant hired plaintiff, an African-American woman, on November 20, 1989 to be a building cleaner at its facility in Tulsa County, Oklahoma. Dkt. # 2, at 1, 4-5. In early 2013, defendant notified plaintiff and her coworkers that they would need to pass two examinations to retain their employment. Id. at 5. Plaintiff immediately informed several supervisors and an official of the Transport Workers' Union Local 514 (the union), to which plaintiff belonged, of a severe disability. Id. at 5-6. To accommodate her disability, plaintiff requested to take the examinations orally and to receive additional support and preparation prior to the examinations. Id. Defendant assented to plaintiff's requests. Id. In June 2013, plaintiff passed the first of the two examinations. Id. Defendant, as it had agreed, provided plaintiff with additional support and allowed her to take the examination orally. Id. In October and November 2013, prior to the second examination, defendant provided other employees with study materials and, for some individuals, personal training. Id. Plaintiff requested such assistance in November 2013, but she received none. Id. Plaintiff verbally informed her supervisor that she suspected defendant's unwillingness to assist her related to her status as a black woman. Id. at 7. Defendant did not respond to plaintiff's statement. Id.

On or around December 6, 2013, plaintiff underwent a medical procedure, for which defendant had previously approved her absence from work. Id. Plaintiff, "groggy from the doctor administered drugs and medicine," nevertheless reported to work and asked her supervisor if there was a task she could perform while medicated. Id. Instead, her supervisor and other representatives of defendant told plaintiff that she would be required to take the second examination immediately. Id. When plaintiff informed them that she had been given no preparation materials and was currently

medicated, the representatives informed her that failing the examination would have no consequences to her employment. Id. at 8. They stated that she would simply be allowed to study and then retake the examination if she did not pass. Id. Despite objecting initially, plaintiff agreed to take the examination. Id.

During the examination, plaintiff mispronounced the names of two chemicals used in her duties as a building cleaner. Id. The individuals conducting the examination asked her to pronounce the names a second time, and plaintiff again mispronounced them. Id. at 8-9. After conferring, the examiners informed plaintiff that she was terminated. Id. at 9. Although plaintiff protested that she had not been given preparation materials, that she was medicated, and that she had been told that there would be no negative consequences to a failed examination, the examiners required plaintiff to report to the Human Resources department to complete defendant's termination procedures. Id. Plaintiff informed those present that she believed the termination "was a setup because she was a black female and had complained about discrimination" to her supervisor. Id.

Plaintiff spoke to a union representative that day, telling him that she believed the firing was the result of discrimination, and the union representative advised her to return to work. Id. at 9-10. Neither the union representative nor any of defendant's representatives met with plaintiff that day after she returned to work. Id. at 10. Plaintiff reported to work the next day, but after a short time she was informed that she had been terminated and was escorted from the premises. Id. Not long thereafter, a union representative secured plaintiff's reinstatement. Id. at 11. However, defendant refused to provide plaintiff with a "restart date," meaning a date on which plaintiff could resume paid employment with defendant, in December 2013 or the beginning of January 2014. Id. As a result, plaintiff was unable to receive unemployment benefits--because of her reinstatement, she was

considered employed--but also unable to earn wages. Id. Defendant also denied plaintiff permission to use her employee flight benefits during this time. Id. at 11-12.

On January 16, 2014, the parties signed the agreement. Id. at 12. The agreement, addressed to a union representative, begins by stating that it is "[i]n response to [his] letter dated December 11, 2013." Id. at 34. Before providing the terms, the agreement asserts that it "constitutes complete and full settlement on behalf of all parties . . . [and] is applicable to this case / individual only and forms no precedent or basis for any grievance or settlements arising out of any other grievances now or in the future." Id. at 34. As part of the terms of the agreement, plaintiff would be allowed to return to work and would have ninety days to prepare for and pass the examination that she previously failed. Id. Her time away from work would "be considered an [a]dministrative leave" for which plaintiff would receive no pay. Id. The agreement states that it "does not constitute a waiver of any contractual right held by [plaintiff] under the terms of the American Airlines/TWU Collective Bargaining Agreement." Id. As part of the agreement, plaintiff acknowledged that she "has had sufficient time in which to review and seek clarification" of the agreement and that she both understood and voluntarily entered into the agreement. Id. The agreement concludes by stating that it is a "complete, final and binding settlement of all matters related to the present dispute concerning [plaintiff's] performance record and his [sic] future employment status with [defendant]." Id. at 35. The document bears the signatures of plaintiff, a representative from the union, and a representative of defendant. Id. at 35. The agreement has a printed date of January 6, 2014 on its first page, and a handwritten date of January 16, 2014 above the parties' signatures. Id. at 34-35. Prior to signing the agreement, plaintiff reiterated her belief that defendant's treatment of her was discriminatory. Id. at 13. After signing the agreement, plaintiff resumed her employment on January 24, 2014. Id.

4

**II.**

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face"and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

**III.**

Defendant argues that all of plaintiff's claims were included in the agreement and that the agreement should be enforced to bar the present litigation.[1] Dkt. # 13, at 1. Plaintiff responds that the agreement is retaliatory and therefore should not bar her claims. Dkt. # 18, at 3. Thus, the Court must determine if all of plaintiff's claims were included in the agreement and if the agreement may be enforced.

"A settlement document is a contract and is construed using ordinary principles of contract interpretation."[2] Anthony v. United States, 987 F.2d 670, 673 (10th Cir. 1993); see also Corbett v. Combined Commc'ns Corp. of Okla., Inc., 654 P.2d 616, 617 (Okla. 1982) ("A release is a contract."). Under Oklahoma law, "[t]he language of a contract is to govern its interpretation, if the

---

[1] Under Rule 12(d), a motion to dismiss under Rule 12(b)(6) must be converted to a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." FED. R. CIV. P. 12(d). However, "[i]n evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference." Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted). The agreement is attached to the complaint, and plaintiff refers to and quotes the agreement throughout the complaint. See Dkt. # 2, at 34-35. Thus, the Court may consider the agreement without converting defendant's motion to a motion for summary judgment.

[2] In her response, plaintiff argues that defendant's citation to cases discussing "unremarkable general contract principles" are inapposite because those cases were not decided in the employment law context. Dkt. # 18, at 3-4 (emphasis in original). However, the Tenth Circuit has clearly stated that "[i]ssues involving the formation, construction and enforceability of a settlement agreement are resolved by applying state contract law." United States v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2000). As defendant points out, the Tenth Circuit has employed general principles of state contract law to determine whether settlement agreements should be enforced in the context of federal employment discrimination claims. See Walters v. Wal-Mart Stores, Inc., 703 F.3d 1167, 1172 (10th Cir. 2013) (applying Oklahoma contract law); Dehning v. Child Dev. Serv's of Fremont Cnty., 261 F. App'x 75, 78-79 (10th Cir. 2008) (unpublished) (applying Wyoming contract law). Thus, cases discussing Oklahoma contract law are appropriate.

language is clear and explicit, and does not involve an absurdity." 15 OKLA. STAT. tit. 15 § 154. "A contract must be considered as a whole so as to give effect to all its provisions without narrowly concentrating upon some clause or language taken out of context." Lewis v. Sac & Fox Tribe of Okla. Housing Auth., 896 P.2d 503, 514 (Okla. 1994). "The terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated." Dodson v. St. Paul Ins. Co., 812 P.2d 372, 376 (Okla. 1991); see also OKLA. STAT. tit. 15 § 160. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ." OKLA. STAT. tit. 15, § 155. "Interpretation of contracts, and whether they are ambiguous, are matters of law for the court to determine." Livesay v. Shoreline, L.L.C., 31 P.3d 1067, 1070 (Okla. Civ. App. 2001) (citing Osprey L.L.C. v. Kelly Moore Paint Co., 984 P.2d 194 (Okla. 1999)).

Defendant argues that the agreement is unambiguous and operates as a waiver of plaintiff's claims. Dkt. # 13, at 4-5. Plaintiff does not address defendant's argument about waiver, arguing instead that the agreement is retaliatory and, therefore, unenforceable.[3] The agreement states that it "constitutes complete and full settlement on behalf of all parties . . . [and] is applicable to this case / individual only and forms no precedent or basis for any grievance or settlements arising out of any other grievances now or in the future." Dkt. # 2, at 34. It also states that it "does not constitute a waiver of any contractual right held by [plaintiff] under the terms of the American Airlines/TWU Collective Bargaining Agreement." Id. It concludes by stating that "[a]cceptance of the terms and

---

[3] As the Court finds that waiver, at this stage on a Rule 12(b)(6) motion, does not necessitate dismissal, the Court need not address plaintiff's argument.

7

conditions of this [a]greement . . . constitutes acknowledgment that this [a]greement is complete, final and binding settlement of all matters related to the present dispute concerning [plaintiff]'s performance record and his [sic] future employment status with [defendant]." Id. at 35.

The agreement is simple and unambiguous, and it includes all of plaintiff's claims. Although the agreement does not explicitly state that plaintiff waives all claims arising from her termination, the terms demonstrate that such was the intent of the parties. The agreement twice states that it is a full settlement of the dispute between the parties, and the second statement elaborates that the dispute concerns plaintiff's "performance record and . . . future employment status." Id. at 34, 35. Furthermore, the agreement "does not constitute a waiver of any contractual right" under the collective bargaining agreement between defendant and the union. Id. at 34. The exclusion of potential contract claims from the agreement shows that the parties intended all other possible claims arising from plaintiff's grievance to be included in the agreement. Cf. Cross Country Land Servs., Inc. v. PB Telecomms., Inc., 276 F. App'x 825, 839 (10th Cir. 2008) ("When the plain language of the contract and intention of the parties are coupled with the doctrine of expressio unius est exclusio alterius, it is apparent that the contract intends to differentiate between subcontractors . . . and service providers."). The complaint sets forth six claims for relief, all of which rest on defendant's alleged discrimination against plaintiff through her examination and termination. See Dkt. # 2, at 14-27. The complaint alleges no events, other than plaintiff's return to work, that occurred after the signing of the agreement and that could be the basis for her claims. See id. at 13. Although the complaint is silent as to whether plaintiff filed any written grievance, it alleges that she made oral statements asserting discrimination at several points, including directly after the examination and

8

at the signing of the agreement. Id. at 9, 12, 13. Thus, all of plaintiff's claims were intended to be settled by the agreement.

As all of plaintiff's claims are included in the agreement, the Court must next determine if, on a Rule 12(b)(6) motion, the agreement necessitates dismissal of plaintiff's claims. Dkt. # 13, at 5-7. The Tenth Circuit has held that "[b]oth Title VII and section 1981 employment discrimination claims may be waived by agreement, but the waiver of such claims must be knowing and voluntary." Torrez v. Pub. Serv. Co. of N.M., Inc., 908 F.2d 687, 689 (10th Cir. 1990). Such waivers "are not lightly to be inferred." Id. (citing Watkins v. Scott Paper Co., 530 F.2d 1159, 1172 (5th Cir. 1976)). To help courts determine whether a waiver is knowing and voluntary, the Tenth Circuit has provided a list of factors to be considered under the totality of the circumstances:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether [p]laintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

Id. at 689-90. Although the Tenth Circuit has not addressed the issue, this Court has previously extended Torrez to include ADA claims. Holmes v. Sw. Reg'l Med. Ctr., Inc., No. 12-CV-225-CVE-PJC, 2012 WL 4473085, at *3 (N.D. Okla. Sept. 26, 2012). No court appears to have addressed waiver in the context of an OADA claim, but under Oklahoma law a waiver "must be voluntary, intentional, and knowing." Hall v. Duncan Sav. & Loan Assoc., 820 P.2d 1360, 1362 (Okla. Civ. App. 1991) (citing Faulkenberry v. Kan. City S. Ry. Co., 602 P.2d 203 (Okla. 1979)). As Oklahoma courts have not outlined any specific method of analyzing waiver under this standard, the Court will

use the Torrez factors to determine whether the agreement necessitates dismissal of plaintiff's OADA claim as well.

As discussed above, the agreement is clear and unambiguous, and so the first Torrez factor, concerning the clarity of the language in the waiver, favors defendant's argument. The complaint is silent as to plaintiff's education and business experience, the second Torrez factor, and this factor cannot be resolved based solely on the allegations in the complaint. The third factor, the amount of time given for deliberation, also cannot be resolved. The agreement bears a printed date of January 6, 2014, and a handwritten date of January 16, 2014. Id. at 34-35. Based on these dates, defendant argues that plaintiff had ten days in which to consider the agreement. Dkt. # 13, at 6. However, there are no facts in the complaint to support that plaintiff was presented with a copy of the agreement on January 6, 2014. Moreover, the complaint alleges that plaintiff was "forced to sign [the agreement] that day," implying that she had only one day to consider the agreement. Dkt. # 2, at 13. The Court cannot resolve this factual dispute when ruling on a motion to dismiss, based solely on the allegations of the complaint.

The fourth factor, whether plaintiff knew or should have known of her rights upon signing the agreement, is apparent both from the text of the agreement and the body of the complaint. The agreement states that it is a complete settlement of all claims related to plaintiff's "performance record and . . . future employment status." Dkt. # 2, at 35. According to the complaint, defendant informed plaintiff prior to the signing of the agreement "that she would not be given a restart date unless she signed away her right to file an EEOC charge, seek damages, and bring a lawsuit." Id. at 13. Thus, plaintiff would have known that by signing the agreement she would waive her ability to bring claims related to her termination. This factor favors defendant's position.

10

The fifth factor asks whether plaintiff received or was encouraged to seek the advice of counsel, and this is "[o]ne of the most important factors when considering the validity of a waiver." Loden v. Blue Cross & Blue Shield of Okla., No. 11-CV-0673-CVE-TLW, 2013 WL 5207238, at *4 (N.D. Okla. Sept. 13, 2013). The complaint alleges that plaintiff was "[u]nable to seek the advice of counsel" prior to signing the agreement. Dkt. # 2, at 13. It is not apparent from the complaint whether plaintiff's lack of counsel was the result of her own decision to forgo such counsel or some other reason, such as a lack of time to secure counsel. The Court cannot conclusively determine at this stage of the case if plaintiff was permitted or encouraged to seek the advice of counsel.

The sixth Torrez factor asks "whether there was an opportunity for negotiation of the terms of the [a]greement." Torrez, 908 F.2d at 690. The agreement is addressed to a union official and opens by stating that it is "[i]n response to [his] letter dated December 11, 2013." Dkt. # 2, at 34. This implies that the agreement was the result of negotiation between defendant and the union. There is no indication in the complaint or the agreement that plaintiff was a participant in the negotiation, and the complaint characterizes the agreement as "a take-it-or-leave-it [s]ettlement [a]greement." Id. at 12. At a minimum, there is a dispute as to whether plaintiff participated in the negotiation of the agreement, whether personally or with union representation and, as a result, this factor cannot be resolved on a motion to dismiss.

The seventh and final factor outlined in Torrez asks whether "the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law." Torrez, 908 F.2d at 690. Defendant argues that the agreement "included significant benefits for [plaintiff] -- [defendant] reversed [plaintiff's] termination and returned her to work." Dkt. # 13, at 7. However, the complaint alleges that

11

"[b]ecause [defendant's] termination of [plaintiff] violated even the collective bargaining agreement, days after her . . . termination [the] union was able to secure her reinstatement." Dkt. # 2, at 11. Thus, according to the complaint, defendant reversed plaintiff's termination prior to the signing of the agreement. What plaintiff received in exchange for the waiver of her claims, then, was a restart date. This does "exceed[] the benefits to which [plaintiff] was already entitled," Torrez, 908 F.2d at 690, and so the seventh factor favors defendant's argument that the waiver was knowing and voluntary, if not as strongly as defendant suggests.

To determine whether a particular waiver is knowing and voluntary, the Tenth Circuit has set out seven factors for courts to consider. Id. at 689. Under the totality of the circumstances, and bearing in mind that defendant has moved to dismiss pursuant to Rule 12(b)(6), the Court cannot resolve many of the Torrez factors, making dismissal inappropriate at this time. Thus, the Court will not dismiss all of plaintiff's claims pursuant to Rule 12(b)(6) on the basis that the claims are foreclosed by the agreement.[4]

## IV.

Defendant argues that plaintiff has failed to provide a "short and plain statement" of any hostile work environment claim and, thus, any such claim should be dismissed. Dkt. # 13, at 7 n.5. Plaintiff responds that she will not pursue a hostile work environment theory of liability, but that no discrimination claim should be dismissed because each will be proven by other means. Dkt. # 18, at 1 n.1. The only reference to a hostile work environment in the complaint comes in plaintiff's first

---

[4] The Court's decision not to dismiss for failure to state a claim upon which relief can be granted is based solely on the allegations in the complaint, as is required for motions under Rule 12(b)(6). See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 12(d). It does not preclude reassertion of the waiver argument in a motion for summary judgment, after discovery has been completed.

claim for relief, which alleges discrimination in violation of Title VII. Dkt. # 2, at 15. The complaint includes the following: "Plaintiff expressly reserves the right to pursue a hostile work environment theory of liability, or any other applicable Title VII theory of liability. Notwithstanding this reservation, [plaintiff] currently pursues the disparate treatment theory of liability." Id.

"A claim may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) when 'the claim is premised upon an unrecognized legal theory of liability or the complaint fails to contain sufficient facts, either direct or inferential, that support each element of a legally cognizable claim.'" Glenn v. City of Tulsa, No. 12-CV-18-GKF-PJC, 2012 WL 3061483, at *2 (N.D. Okla. July 26, 2012) (quoting Debt Exchange, Inc. v. Blount, No. CIV-07-788, 2008 WL 548827, at *2 (W.D. Okla. Feb. 26, 2008)). Here, the complaint states that plaintiff will prove her Title VII discrimination claim under either a hostile work environment or disparate treatment theory of liability. Each of these theories of liability is recognized. See Stinnett v. Safeway, Inc., 337 F.3d 1213 (10th Cir. 2003) (outlining the requirements of each theory of liability). Defendant argues that the complaint fails to allege facts sufficient to support a hostile work environment theory. Dkt. # 13, at 7 n.5. Plaintiff agrees that she will not pursue a hostile work environment theory as part of her Title VII claim. Dkt. # 18, at 1 n.1. Defendant does not argue that the complaint fails to allege sufficient facts to support a Title VII discrimination claim under a disparate treatment theory of liability. Thus, plaintiff's Title VII claim should not be dismissed for failure to state a claim upon which relief can be granted.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (Dkt. # 13) is hereby **denied**. Defendant is directed to file it answer to plaintiff's complaint (Dkt. # 2) no later than **May 29, 2015.**

**DATED** this 15th day of May, 2015.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

13