**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

ANNA MARIE PITTMAN,

       Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

       Defendants.

Case No.14-CV-0728-CVE-FHM

## OPINION AND ORDER

  Defendant's Motion for a Protective Order, [Dkt. 55], is before the undersigned United States Magistrate Judge for decision. The matter has been fully briefed, [Dkt. 55, 68, 77], and is ripe for decision.

  Plaintiff has served a notice for a 30(b)(6) deposition on Defendant, seeking the designation of a corporate representative to testify on 20 numbered topics further defined by numerous subparts. [Dkt. 55-1]. Defendant objects to designating a corporate representative to testify for all but topic numbers 1 and 2 as those topics seek testimony regarding the factual bases for Defendant's Answer and affirmative defenses. Plaintiff has withdrawn topic numbers 13 and 18. For the remaining topics Defendant seeks a protective order.

  Shortly before the discovery deadline and after conducting five depositions of the individuals personally involved in the event giving rise to this case, Plaintiff served a 30(b)(6) notice on Defendant covering 20 topics. According to Plaintiff, the purpose of the 30(b)(6) notice is a "wrap-up for missing testimony at the conclusion of discovery." [Dkt. 68, p. 2 n.1]. However, many of the noticed topics are much broader than a wrap-up for

missing testimony and are not proportional to the needs of the case. Fed.R.Civ.P. 26(b)(1).

## Background

Plaintiff was employed by Defendant as a building cleaner and her employment was subject to a collective bargaining agreement (CBA). In April 2013, Defendant outsourced the building cleaner jobs, including Plaintiff's position. Defendant allowed Plaintiff (and others similarly situated) to bid into more skilled Maintenance Support Person (MSP) positions. Plaintiff bid into a Hazardous Waste MSP position. The CBA required an examination for those in MSP positions, taken at the 180 day mark (the 180-day test), to demonstrate the ability to perform the new job. Plaintiff failed the 180-day test.

The CBA provides that a person who fails a 180-day test is returned to their former position. An exception was negotiated for Plaintiff since the former position no longer existed. Upon signing a settlement agreement Plaintiff was moved to a position where she did not handle hazardous waste.

Plaintiff has sued Defendant alleging employment discrimination on the basis of her race and gender, and for failing to accommodate her alleged disability of a hearing loss and dyslexia/learning disability. Plaintiff has deposed the following people:

> Mark Easton, the Managing Director of the Tulsa Maintenance Facility where Plaintiff worked. He approved and executed the settlement agreement that allowed Plaintiff to work at another MSP position after she failed the 180-day test for the Hazardous Waste MSP position;
>
> Mark Nelson, Senior Manager in Labor Relations, who negotiates CBAs with the union that represents Plaintiff's workgroup;

> Josh Voss, who worked in Human Relations and drafted the settlement agreement that allowed Plaintiff to work at another MSP position after she failed the 180-day test for the Hazardous Waste MSP position;
>
> Richard Gilmore, Plaintiff's direct supervisor in the Hazardous Waste MSP position, who has knowledge of the process used to prepare employees for the 180-day test and the administration of the test;
>
> Chuck Beaston, Richard Gilmore's manager, he made the decision to place Plaintiff out of work after she failed the 180-day test and who with Mark Easton's assistance located the alternative MSP position for Plaintiff.

## Analysis

The court is guided by Fed.R.Civ.P. 26(b), as amended effective December 1, 2015, which provides in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

### TOPIC 3: Defendant's awareness and accommodation of Plaintiff's hearing disability and dyslexia/learning disability.

Defendant argues Plaintiff's hearing loss is irrelevant because she does not allege her failure of the 180-day test was related to her hearing loss. Further, since Plaintiff is required to show that the individual who made the employment decision had personal knowledge of her disability, the general corporate knowledge of her disability sought by this topic is not relevant. In addition, Defendant argues that, to the extent this topic requires a

survey of everyone who ever worked with Plaintiff to determine their knowledge of her conditions, it would be unduly burdensome to prepare a corporate designee to testify.

Plaintiff generally asserts that corporate knowledge is relevant and points out that deposition testimony and documents produced by Defendant make clear that for the better part of a decade Defendant documented her learning and hearing disabilities in her personnel file. [Dkt. 68, pp. 4-5]. Plaintiff suggests that Defendant interview each of her supervisors and managers and call in a few co-workers to inquire as to whether they knew of her disabilities. *Id.* at 5.

Plaintiff's response demonstrates she already has the information she seeks in the form of the personnel file. Plaintiff has not demonstrated the need for 30(b)(6) testimony on this topic. The motion for protective order is granted as to topic 3.

**Topic 4:  Reasons Plaintiff was excused from a mandatory conflict clinic in 2007**

Defendant argues this information duplicates an interrogatory that has been answered. In addition, Defendant asserts that an event that occurred 7 years before the incident at issue is irrelevant. Plaintiff does not dispute the interrogatory answer contains the information addressed by this topic.

Plaintiff has the information this topic seeks. The motion for protective order is granted as to topic 4.

**Topic 5:  Interactive process[1] sessions Defendant had with Plaintiff and Defendant's policy for interactive process sessions**

Defendant cites case law establishing that an employer's duty to engage in the interactive process is not triggered until an employee requests assistance for her disability and Plaintiff's deposition testimony that she had no recollection of telling anyone in management that she had difficulty reading, a fact that she generally keeps secret. Defendant argues that since Plaintiff testified that she did not request an accommodation for disability, its duty to engage in the interactive process never arose and therefore testimony on the topic is irrelevant.  Within this topic Plaintiff also seeks testimony as to whether any EEOC office or court within the United States has ever found Defendant to be in violation of its ADA interactive session duties.  Defendant argues that this aspect of the topic is overbroad and unduly burdensome as there is no centralized or searchable database for such information.

Plaintiff asserts that whether she requested an accommodation that would trigger the interactive process session is a fact specific inquiry and 30(b)(6) testimony would help develop those facts.  Plaintiff points out that in December 2013, she presented a doctor's note prescribing that all tests be administered orally because of a diagnosis of dyslexia. Further, Plaintiff argues that other findings about Defendant's violations of the interactive process requirement are relevant for punitive damages purposes in that they would show that Defendant had notice of its federal obligations and chose to willfully or recklessly

---

[1] The federal regulations implementing the Americans With Disabilities Act (ADA) envision an interactive process requiring participation by both parties whereby precise limitations resulting from a disability and potential reasonable accommodations that could overcome those limitations are identified.  *Smith v. Midland Brake,* 180 F.3d 1154, 1171 (10th Cir. 1999) (quoting 29 C.F.R. § 1630.2(o)(3)).

ignore those obligations. In its reply brief, Defendant points out that the doctor's note to which Plaintiff referred was written two weeks <u>after</u> the challenged adverse employment decision at issue in this case. Defendant also states that it is not asserting lack of knowledge of Title VII or the ADA.

It is clear that the interactive process did not occur. As a consequence, it makes no practical sense to have a witness testify as to when such a session occurred with Plaintiff, who conducted it, and whether it was recorded. Defendant does not claim it did not have notice of its obligations under the Title VII and the ADA. Plaintiff has not demonstrated the necessity of putting Defendant to the burden of answering questions regarding findings as to violations of the requirement for interactive sessions. Accordingly, the protective order is granted as to Topic 5 (a), (b), (c), and (f).

In view of the case law establishing that " as a precondition to suit, employees have the burden to request accommodation unless the employer has 'foreclosed the interactive process through its policies or explicit actions,'" *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 744 (10th Cir. 2013)(quoting *Davoll v. Webb*, 194 F.3d 1116, 1133 (10th Cir. 1999)), testimony about Defendant's formal policy regarding interactive sessions and the practical day-to-day custom about the conduct of such sessions at the Tulsa Maintenance Facility is relevant. Accordingly, the protective order is denied as to Topic 5 (d) and (e).

**Topic 6: Defendant's efforts to ensure compliance with Title VII and the ADA**

Defendant states that Plaintiff has already deposed her supervisors and decision makers in this case and she had the ability to question them about their understanding of Title VII and the ADA and any training they may have received. Defendant argues that

whether other individuals in the corporate headquarters or in other locations keep abreast of these topics is irrelevant to this case.

Plaintiff states that the Human Resources representative, Josh Voss, was unable to answer or discuss how Title VII and ADA issues were treated generally by Defendant or specifically with respect to her claim. Plaintiff claims to have been "bandied about."[2] However, Plaintiff has not provided any deposition excerpts or specific information to demonstrate that is the case. The court finds that Plaintiff has not demonstrated the need for a 30(b)(6) deposition on topics that she has already had the opportunity to explore with witnesses who were the decision makers with regard to her employment. The motion for protective order is granted as to topic 6.

### Topic 7: Defendant's notice and awareness of actual and/or potential Title VII and/or ADA violations in 2012 in Oklahoma[3]

Plaintiff argues that testimony on this topic is relevant to foreclose any argument by Defendant that it was ignorant of the law. Defendant asserts that it is not asserting that it lacks knowledge of Title VII or the ADA, or that ignorance of those legislative acts would be a defense in this case. The motion for protective order is granted as to topic 7.

### Topic 8: Defendant's efforts to prepare Plaintiff for the Spring 2013 mandatory test and administration of the test

Defendant asserts that this topic seeks testimony about a test administered orally to Plaintiff shortly after she bid into the Hazardous Waste MSP position. Plaintiff passed

---

[2] The Advisory Committee Notes for the 1970 Amendment to Fed.R.Civ.P. 30 state the 30(b)(6) process "will curb 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it."

[3] At the meet and confer, the scope was narrowed from company-wide to Oklahoma.

that test, which Defendant asserts was not substantively similar to the December 180-day proficiency test which she failed and which is the subject of this lawsuit. Defendant argues that the level of detail demanded by the subparts of the topic as to not only Plaintiff's preparation for that test, but that of her co-workers is not relevant to this case.

From Plaintiff's response to Defendant's objection and the content of the subparts to this topic, it appears that Plaintiff initially failed the Spring 2013 test, but after receiving additional test preparation and having the test administered orally she passed the test. Plaintiff states that deponent Chuck Beaston testified he was told Plaintiff had difficulty reading and arranged the oral test. Plaintiff asserts that the Spring 2013 test information would allow a fact finder to conclude that the company knew she had a disability, was requesting a reasonable accommodation, and needed the additional test preparation she received.

It appears Plaintiff already has the information she seeks, however, Defendant does not assert that presenting a corporate designee to testify on this topic would be onerous. It appears that testimony on this topic may be relevant to the actions taken by both parties as to the 180-day test. Accordingly, the motion for protective order is denied as to Topic 8 (a), (b), (c), (d), (e), and (i). The remaining subparts are either not suitable topics for discovery by means of a 30(b)(6) deposition, or do not appear to be relevant to the issues in this case. The motion for protective order is granted as to Topic 8 (f), (g), and (h).

**Topic 9: Defendant's outsourcing of the TUL building/lawn jobs in 2012**

Defendant argues that the topic is irrelevant because there are no claims that the outsourcing of jobs was discriminatory; testimony as to subparts 9(b), (c), and (d) would essentially require a corporate designee to read the CBA to Plaintiff's counsel; and Plaintiff

has already deposed Mark Nelson, whose job it is to administer the relevant CBA and Plaintiff has designated Mr. Nelson as an expert witness on the CBA, so any 30(b)(6) testimony would be duplicative and cumulative.

Plaintiff has not demonstrated this topic is relevant to the matters at issue in this case. The motion for protective order is granted as to Topic 9.

### Topic 10: Defendant's understanding of its legal obligations under the CBA, Title VII, and the ADA when those conflict

Defendant objects to this topic as being argumentative, inappropriate as a 30(b)(6) topic, and seeking testimony about a hypothetical situation of which there is no evidence in this case. Defendant maintains there is no evidence Defendant was faced with violating the CBA on one hand and Title VII and the ADA on the other. Plaintiff asserts that her argument with respect to topic 9 is applicable to this topic. Plaintiff states she is seeking testimony as to the Defendant's subjective understanding of which law is superior in a conflict of laws.

Plaintiff has not demonstrated this topic is relevant to the matters at issue in this case. The motion for protective order is granted as to Topic 10.

### Topic 11: Defendant's historic misinterpretations of its legal obligations under the CBA, Title VII, and the ADA

Defendant argues that this topic is argumentative and inappropriate for a 30(b)(6) deposition as the subparts to this topic ask whether anyone in the company with worldwide operations and 100,000 employees has been found by the Defendant or others to have violated Title VII or the ADA. Gathering such information would be unduly burdensome as no centralized and searchable database of such information exists. In addition, that

information is not probative as to whether the decision-makers in this case discriminated against Plaintiff. Defendant also asserts that Plaintiff has deposed everyone she has sought to depose and has had ample opportunity to ask them about their understanding of Defendant's legal obligations.

Plaintiff states she wants to know whether decision-makers regularly consult with counsel regarding their Title VII and ADA obligations because that information would allow an inference of intentional discrimination which is relevant to punitive damages. Plaintiff also states she wants to know whether Defendant commits systematic failures with respect to employee rights as a general matter, or whether this case was a departure from otherwise meaningful and proper procedures.

Plaintiff has not demonstrated that company-wide discovery is relevant in this case. Further, Plaintiff does not dispute that she has had the opportunity to question the decision-makers in this case. The motion for protective order is granted as to Topic 11.

### Topic 12:  Defendant's formal policies and day-to-day customs with respect to Title VII and the ADA

Defendant asserts that to the extent the topic seeks information about the written policies, they have already been supplied in discovery. To the extent the topic seeks testimony on Defendant's customs, the topic is vague and ambiguous making it impossible to prepare a witness. Plaintiff states she seeks testimony from a 30(b)(6) witness how, as a practical matter, the policies are implemented and complied with by Defendant.

The topic is not vague or ambiguous in light of the subparts and Plaintiff's response brief which sufficiently identify the information Plaintiff seeks for this topic. The motion for

protective order is denied as to Topic 12, but the inquiry is limited to the practices at the Tulsa County facility.

### Topic 14: Defendant's test preparation efforts for the December 4, 2013 test and Defendant's administration of that test

Defendant argues that as to subpart (a) concerning training for the test, that information has been provided in answer to interrogatories and by way of the deposition of Richard Gilmore, the individual with the most knowledge about the test preparation received by Plaintiff and her co-workers. As to subparts (b) and (d), Defendant points out that these are yes/no questions, better suited to requests for admissions. With regard to subparts (e) through (h), Defendant states it has explained in previous discovery responses that the test administrator Ray Richardson concluded that Plaintiff failed the test because she could not demonstrate how to remediate a particular chemical, not because of problems with pronunciation. Further, Defendant asserts it has provided a list of all possible test questions, identified the ones presented to Plaintiff, and identified the one question Plaintiff failed.

Plaintiff states that although Richard Gilmore was deposed, he could not recall anything of substance about her test preparation. Further he testified he was in charge of numerous employees, delegated duties, and could not speak for those to whom he delegated duties.[4]

This topic is a fair area for inquiry to the extent the questioning is not unduly duplicative of discovery already provided. That is, Defendant is required to produce a

---

[4] Plaintiff's response makes reference to Mr. Gilmore's testimony concerning the April 2013 test. However, that test is not included in Topic 14.

witness or witnesses to testify as to the test preparation duties that were delegated by Mr. Gilmore and the administration of the test. Subparts (b), (d), and (j) seek Defendant's version of events and are therefore an appropriate area of inquiry.

The motion for protective order is granted in part as to Topic 14.

### Topic 15: The events of December 4 and December 5, 2013 with respect to Plaintiff

Here Plaintiff seeks testimony about what happened immediately after her test failure, including who said what, when, and where; who gave Plaintiff a box to clean out her locker, when, and why; who deactivated her badge; whether Defendant ever contemplated that she should have interim employment; what was done to obtain interim employment; and when and why was Plaintiff taken off of payroll around December 6, 2013. Defendant argues that these are fact-specific questions about what happened immediately following Plaintiff's test failure and are not proper subjects for a corporate designee. Further, Plaintiff has already inquired about these topics in the depositions she has taken.

Plaintiff asserts that after several depositions, it is clear that no one knows who told her to go home, who instructed her to clean out her locker, who handed her a cardboard box to pack her belongings, who instructed her to report and other essential facts. She states that a 30(b)(6) deposition is necessary because the named witnesses do not recall these facts.

Defendant is required to produce a 30(b)(6) witness to address these topics. If, after reasonable inquiry, Defendant is unable to identify who performed these tasks, it is acceptable for Defendant to so advise Plaintiff.

The motion for protective order is denied as to Topic 15 as specified herein.

**Topic 16:  Defendant's formal policy and day-to-day custom concerning Tulsa employees who are placed on a PLOA, UA, or who are terminated**

Defendant argues that Plaintiff is not pursuing a hostile work environment claim, the embarrassment she claims to have suffered when her badge was deactivated and she was asked to clean out her locker do not rise to an adverse employment action and therefore this information is not relevant to Plaintiff's claims.  Plaintiff asserts that the information is relevant to her retaliation claims.

This topic is a fair area for discovery and a 30(b)(6) is a suitable vehicle to obtain this information.  The motion for protective order is denied as to Topic 16.

**Topic 17:  Defendant's actions and words from December 4, 2013 through January 25, 2014 with respect to Plaintiff's December 4 test failure and her resulting situation**

Defendant argues that most of the subparts of Topic 17 are objectionable because they have been or could have been the subject of questioning when Plaintiff deposed the fact witnesses with the most personal knowledge of the topics including those who drafted, approved and executed the settlement agreement that brought Plaintiff back to work. Defendant asserts that the term Plaintiff's "situation" is too vague and ambiguous to allow preparation with any precision.  Defendant also argues that the question of whether any employee in the company has ever signed an agreement similar to Plaintiff's is irrelevant and it would be unduly burdensome to prepare because there is no centralized database of settlement agreements.

Plaintiff states that although Mark Easton signed the settlement agreement, he testified he did not draft the agreement.  Josh Voss, purportedly drafted the settlement agreement, but testified that some portions were not drafted by him and could not recall

13

who drafted those portions.  Plaintiff argues that a 30(b)(6) deposition is appropriate to fill in the holes.

From the parties' submissions, the court cannot determine whether the matters covered by this topic are ones that were or should have been covered in the depositions taken in this case.  Further, the relevance of identifying precisely who drafted each provision of the settlement agreement is not apparent.  While the phrase Plaintiff's "situation" may be somewhat vague, the subparts to topic 17 are sufficiently specific to provide the detail necessary to prepare a witness to testify.  The court reads subpart (f) as referring to Tulsa employees and finds that subpart should be limited to settlement agreements for employees similarly situated to Plaintiff.  That is: employees whose jobs were eliminated by out sourcing and who bid for MSP positions, failed the 180-day or similar test, and subsequently entered into settlement agreements to secure different positions.  The motion for protective order is denied as to Topic 17 as specified herein.

**Topic 19:  Defendant's response and justification to the Unemployment Insurance claim Plaintiff applied for in or around December 2013**

Defendant asserts this topic is duplicative of discovery already produced in this case. Defendant has responded to Plaintiff's request for production of documents on this topic that it did not have any documents responsive to the request because it has no record that Plaintiff ever filed for unemployment benefits.  Defendant argues that it should not have to present a corporate representative to speak about a purported unemployment filing it has already stated it did not know about.

Plaintiff asserts that someone at Defendant company denied her request for unemployment and stated she was "employed." She argues that she should be permitted to question a corporate designee as to who relayed the information that she was employed.

Defendant is not required to produce a corporate representative to testify about something about which it has no record. However, Defendant is required to make reasonable inquiry to ascertain if anyone received such a telephone call and advised that Plaintiff was still employed and to produce a 30(b)(6) witness to testify about the results of the reasonable inquiry.

The motion for protective order is granted in part as to Topic 19.

**Topic 20: The formal and informal methods and means of information sharing among company management and supervisors concerning personnel placed on a PLOA, UA, RIF or such terms' functional equivalent**

Defendant stated this topic seeks testimony on irrelevant matters. Plaintiff states that testimony on this topic is relevant because no one is taking ownership of what happened. She states that after examining witnesses who should have been the decision-makers or known about the decisions, she is still without an explanation as to who sent her home, when, and why. Plaintiff states she desires testimony as to Defendant's internal process for handling personnel situations to determine whether the company has a systematic problem with dealing with employees or whether the company breached its monitoring system with respect to her.

It is inconceivable that Plaintiff does not know who sent her home, when she was sent home, and the reason she was given for being sent home. In any event Topic 20 does not appear to be directed toward discovering that information. Plaintiff has not demonstrated that Defendant's internal procedures for monitoring the status of employees

on some type of leave status has any relevance to any claim or defense. The motion for protective order is granted as to Topic 20.

## Conclusion

Defendant's Motion for a Protective Order, [Dkt. 55], is GRANTED in Part and DENIED in Part, as specified herein.

SO ORDERED this 1st day of February, 2016.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE