## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ANNA MARIE PITTMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14-CV-0728-CVE-FHM** |
| | ) | |
| **AMERICAN AIRLINES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is Defendant American Airlines, Inc.'s Motion for Summary Judgment and Brief in Support (Dkt. # 87). Defendant asks the Court to grant summary judgment in its favor, arguing that the undisputed facts show that plaintiff signed a settlement agreement releasing all claims against defendant. Id. at 7. In the alternative, defendant argues that plaintiff has failed to make a prima facie showing of discrimination based on her sex, race, or alleged disability or a prima facie showing of retaliation, and fails to demonstrate pretext. Id. at 7-8. Plaintiff responds that the settlement agreement is unenforceable because it is not a knowing and voluntary waiver of all her claims against defendant and asserts that she has established a prima facie case and demonstrated pretext as to her disability and retaliation claims. Dkt. # 96.[1] Defendant has filed a reply. Dkt. # 106.

---

[1] The Court cites Dkt. # 96 as plaintiff's response to defendant's motion for summary judgment. The Court has reviewed plaintiff's original response (Dkt. # 96) and the numerous errata plaintiff filed (Dkt. ## 98, 99, 102), which do not alter substantively plaintiff's response. For the sake of clarity, the Court cites plaintiff's original response (Dkt. # 96) only.

## I.

Plaintiff, an African American female, served as a building cleaner in defendant's Tulsa plant.  Dkt. # 87, at 8; Dkt. # 96, at 12.  Defendant outsourced all of its building cleaner positions in 2012, but negotiated with its union to allow former building cleaners to bid into maintenance support positions.  Dkt. # 87, at 9;  Dkt. # 96, at 12.  One of these maintenance support positions was a hazardous waste maintenance position.  Dkt. # 87, at 9; Dkt. # 96, at 12.  Plaintiff and five other former building cleaners voluntarily bid into this position.  Dkt. # 87 at 9; Dkt. # 96, at 12.  Of the five other building cleaners who bid into this position, two were African-American females, two were African-American males, and one was a Caucasian male.  Dkt. # 87, at 9; Dkt. # 96, at 12.  The hazardous waste maintenance support position requires handling, transportation, and clean up of various different chemicals used at defendant's facility.  Dkt. # 87 at 9; Dkt. # 96, at 12.  A critical aspect of this position is the ability to safely clean up both large and routine chemical spills.  Dkt. # 87, at 9; Dkt. # 96, at 12.

Defendant provided plaintiff and the five other employees with classroom and on-the-job training to help them transition into this position.  Dkt. # 87, at 10; Dkt. # 96, at 12.  As part of this training, plaintiff shadowed senior hazardous waste maintenance support employees for six months.  Dkt. # 87, at 10; Dkt. # 96, at 12.  After six months, hazardous waste maintenance support employees are expected to be able to work independently and, after 180 days in the positions, must pass a test to demonstrate their qualifications.  Dkt. # 87, at 10; Dkt. # 96, at 12-13.  The test is designed to ensure that employees understand how to handle, remediate, and dispose of hazardous chemicals safely.  Dkt. # 87, at 10; Dkt. # 96, at 13.  Because different chemicals require different safety gear and remediation techniques, employees must be able to look up specific chemicals in an

online database and be able to read and understand information about safety precautions and clean-up techniques unique to specific chemicals. Dkt. # 87, at 10; Dkt. # 96, at 12. Plaintiff acknowledges that the first step in any remediation effort is to utilize the database to look up a specific chemical. Dkt. # 87, at 10; Dkt. # 96, at 12. A hazardous waste maintenance employee's failure to identify and utilize the proper safety gear or remediation technique could result in serious property damage, bodily injury, or death. Dkt. # 87, at 10; Dkt. # 96, at 13.

The so-called 180-day test consists of ten questions that require the employee to demonstrate her knowledge of the proper handling, remediation, and disposal procedures for various hazardous chemicals. Dkt. # 87, at 10; Dkt. # 96, at 13. Before the 180-day test, defendant made available to plaintiff and the five other employees who were transitioning to the hazardous waste maintenance positions a set of twenty-five questions, from which ten questions would be drawn for the exam. Dkt. # 87, at 11; Dkt. # 96, at 12. Plaintiff also received at least two-weeks' notice of her test date, and met with her crew chief, to prepare for and practice taking the exam. Dkt. # 87, at 11; Dkt. # 96, at 13.

Plaintiff asserts that she suffers from dyslexia and hearing loss in both ears. Dkt. # 96, at 7. Plaintiff alleges that she was diagnosed with dyslexia over thirty years ago, and defendant was aware that she suffered from both hearing loss and a learning disability, identifying personnel file materials containing such notations. Dkt. # 96, at 7; Dkt. # 102, at 128. Plaintiff asserts that due to her dyslexia, she needs to take exams orally. Dkt. # 96, at 8. Plaintiff asserts that she notified her direct supervisor, Richard Gilmore, that she had difficulty reading and requested oral exams, but acknowledges that she did not tell Gilmore that her difficulty reading was due to dyslexia. Dkt. # 87-1, at 29. Despite plaintiff's dyslexia, she graduated from high school, attended vocational

training to work as a nursing aide, and worked as a nurse's aid.  Id at 12.  During preparation for the 180-day test, plaintiff complained to Gilmore that she was not receiving proper preparation for the test because she was a black female and wanted more training, but made no complaints about inadequate preparation due to her dyslexia or hearing problems.  Dkt. # 87, at 15; Dkt. # 96, at 11.

On December 4, 2013,[2] Technical Operations Training Instructor Ray Richardson, an African-American male, orally administered plaintiff's test.  Dkt. # 87, at 11; Dkt. # 96, at 12.  One of the test questions required plaintiff to demonstrate the proper procedure for cleaning up a hazardous waste spill.  Dkt. # 87, at 11; Dkt. # 96, at 12.  Richardson observed that plaintiff was neither able to utilize the online database to look up the specific chemical, nor explain the proper remediation technique.  Dkt. # 87-6, at 2.  Based on these observations, Richardson determined that plaintiff had failed the test.  Dkt. # 87, at 11; Dkt. # 96, at 14.  Josh Voss, defendant's Human Resources Representative, informed plaintiff that defendant was terminating plaintiff's employment based on her failure of the 180-day test.  Dkt. # 87, at 11; Dkt. # 96, at 12.  The five other former building cleaners who were transitioning to hazardous waste maintenance positions all passed their 180-day tests and became permanent employees in these positions.  Dkt. # 87, at 12; Dkt. # 96, at 14.

Pursuant to the collective bargaining agreement that governed plaintiff's employment, the normal course of action after plaintiff's failure of the 180-day test would be to return plaintiff to her

---

[2]    Plaintiff asserts that she underwent a colonoscopy on December 3, 2013 and was still experiencing the effects of sedation when she arrived at work on the day of the 180-day test. Dkt. # 96, at 9.  Plaintiff asserts the she notified her supervisors that she did not want to take the 180-day test because she was still groggy, but was informed that she could retake the test if she failed.  Id.  But plaintiff acknowledges that she was alert enough to drive her car to work the day she took the exam and that she was alert during the exam.  Dkt. #106-1, at 5.

previous building cleaner position.  Dkt. # 87, at 12; Dkt. # 96, at 14.  However, because defendant outsourced plaintiff's previous position, it did not have a position to which plaintiff could return. Dkt. # 87, at 12; Dkt. # 96, at 14.  Defendant ultimately identified another position that plaintiff would be capable of performing.  Dkt. # 87, at 12-13; Dkt. # 96, at 14-15.  On January 16, 2014, plaintiff met with two union representatives, Dave Corbitt and Gary Yingst, who explained that defendant had found another position for plaintiff.  Dkt. # 87, at 13; Dkt. # 96, at 15.  Corbitt and Yingst presented plaintiff with a settlement agreement to be signed before plaintiff assumed the new position.  Dkt. # 87, at 13; Dkt. # 96, at 15.  Under the terms of the settlement agreement, defendant agreed to place plaintiff in another maintenance support position in its Tulsa plant in exchange for a release of all claims by plaintiff against defendant.  Dkt. # 2, at 34.  The settlement agreement stated that the parties "agree that the following settlement constitutes complete and full settlement on behalf of all parties," noted that the agreement did "not constitute a waiver of any contractual rights held by [plaintiff] under the terms of the [collective bargaining agreement]," and concluded by stating that  "this [a]greement is complete, final and binding settlement of all matters related to the present dispute concerning [plaintiff's] performance record and [her] future employment status with defendant."  Id. at 34-35.

Corbitt and Yingst read the settlement agreement aloud to plaintiff, and allowed her to ask any questions about the terms of the settlement.  Dkt. # 87, at 13; Dkt. # 96, at 15-16.  Neither Corbitt nor Yingst required that plaintiff sign the settlement agreement during the meeting nor did they give plaintiff any deadline for signing the agreement.  Dkt. # 87, at 13-14; Dkt. # 96, at 16. Plaintiff understood that she could have taken the agreement home for further consideration and could have consulted an attorney about the contents of the agreement.  Dkt. # 87, at 14; Dkt. # 96,

at 16.  Plaintiff chose to sign the settlement agreement at the conclusion of the meeting with Corbitt and Yingst.  Dkt. # 87, at 14; Dkt. # 96, at 12.  Plaintiff resumed work with defendant in the new maintenance support position on January 21, 2014.  Dkt. # 86, at 14; Dkt. # 96, at 12.

Plaintiff subsequently filed this action, alleging claims of race and gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII); racial discrimination and retaliation under 42 U.S.C. § 1981; race and gender discrimination under the Oklahoma Anti-Discrimination Act, OKLA. STAT. tit. 25, § 1101 et seq. (OADA);  and failure to accommodate and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 1201 et seq. (ADA).  Dkt. # 2.  Defendant sought dismissal of plaintiff's complaint, arguing that the agreement plaintiff signed before returning to work was a valid and enforceable settlement agreement that released defendant from liability for the claims plaintiff asserts.  Dkt. # 13.  The Court entered an opinion and order (Dkt. # 29) finding that, at the 12(b)(6) dismissal stage, it did not have enough factual information to determine whether the settlement agreement was a valid and enforceable waiver of plaintiff's claims.  Defendant now moves for summary judgment, renewing its argument that the agreement plaintiff signed releases defendant from all the claims plaintiff now asserts, arguing that plaintiff fails to make a prima facie case of sex, race, or disability discrimination or retaliation, and arguing that plaintiff fails to demonstrate pretext as to any of her claims.  Dkt. # 87, at 7.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 250 (1986); <u>Kendall v. Watkins</u>, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" <u>Id.</u> at 327 (quoting FED. R. CIV. P. 1).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law." <u>Id.</u> at 251-52.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

## A.

Defendant first argues that it is entitled to summary judgment because plaintiff signed a settlement agreement that encompasses all the claims plaintiff attempts to assert in this suit.  Dkt. # 87, at 17.  Plaintiff responds that the agreement is invalid and unenforceable because it lacks consideration and was not a knowing and voluntary waiver of plaintiff's claims .  Dkt. # 96, at 17-18.  The Court previously considered this argument in defendant's motion to dismiss, concluding that, although the settlement agreement encompassed all of plaintiff's claims, at the 12(b)(6) dismissal stage, the Court could not conclusively determine whether the settlement agreement was a knowing and voluntary waiver.  Dkt. # 29, at 9-12.  The Court now considers the issue again at the summary judgment stage, when discovery has been conducted, and the Court has a more extensive factual basis upon which to evaluate defendant's argument.

"A settlement document is a contract and is construed using ordinary principles of contract interpretation."  Anthony v. United States, 987 F.2d 670, 673 (10th Cir. 1993); see also Corbett v. Combined Commc'ns Corp. of Okla., Inc., 654 P.2d 616, 617 (Okla. 1982) ("A release is a contract.").  Under Oklahoma law, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."  15 OKLA. STAT. tit. 15, § 154.  "A contract must be considered as a whole so as to give effect to all its provisions without narrowly concentrating upon some clause or language taken out of context."  Lewis v. Sac & Fox Tribe of Okla. Housing Auth., 896 P.2d 503, 514 (Okla. 1994).  "The terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was

8

negotiated." <u>Dodson v. St. Paul Ins. Co.</u>, 812 P.2d 372, 376 (Okla. 1991); <u>see also</u> OKLA. STAT. tit. 15, § 160. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ." OKLA. STAT. tit. 15, § 155. "Interpretation of contracts, and whether they are ambiguous, are matters of law for the court to determine." <u>Livesay v. Shoreline, L.L.C.</u>, 31 P.3d 1067, 1070 (Okla. Civ. App. 2001) (citing <u>Osprey L.L.C. v. Kelly Moore Paint Co.</u>, 984 P.2d 194 (Okla. 1999)).

In considering defendant's argument in its motion to dismiss, the Court concluded that the settlement agreement included all of plaintiff's claims.  Dkt. # 29, at 8 ("The agreement is simple and unambiguous, and it includes all of plaintiff's claims.").  Thus, the only question before the Court regarding the settlement agreement is whether it constitutes a knowing and voluntary waiver of plaintiff's claims.  The Tenth Circuit has held that "[b]oth Title VII and section 1981 employment discrimination claims may be waived by agreement, but the waiver of such claims must be knowing and voluntary." <u>Torrez v. Pub. Serv. Co. of N.M., Inc.</u>, 908 F.2d 687, 689 (10th Cir. 1990) (citations omitted). Such waivers "are not lightly to be inferred." <u>Id.</u> (citing <u>Watkins v. Scott Paper Co.</u>, 530 F.2d 1159, 1172 (5th Cir. 1976)).  To help courts determine whether a waiver is knowing and voluntary, the Tenth Circuit has provided a list of factors to be considered under the totality of the circumstances:

> "(1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether [p]laintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law."

Id. at 689-90 (quoting Cirille v. Arco Chem. Co., 862 F.2d 448, 451 (3d Cir. 1988). Although the Tenth Circuit has not addressed the issue, this Court has previously extended Torrez to include ADA claims. Holmes v. Sw. Reg'l Med. Ctr., Inc., No. 12-CV-225-CVE-PJC, 2012 WL 4473085, at *3 (N.D. Okla. Sept. 26, 2012). No court appears to have addressed waiver in the context of an OADA claim, but under Oklahoma law a waiver "must be voluntary, intentional, and knowing." Hall v. Duncan Sav. & Loan Assoc., 820 P.2d 1360, 1362 (Okla. Civ. App. 1991) (citing Faulkenberry v. Kan. City S. Ry. Co., 602 P.2d 203 (Okla. 1979)). As Oklahoma courts have not outlined any specific method of analyzing waiver under this standard, the Court will use the Torrez factors to determine whether summary judgment is appropriate regarding plaintiff's OADA claim.

As the Court concluded in its opinion and order regarding defendant's motion to dismiss, "the agreement is clear and unambiguous, so the first Torrez factor, concerning the clarity of the language in the waiver favors defendant's argument." Dkt. # 29, at 10. With respect to the second Torrez factor, plaintiff has a high-school education and more than twenty years of work experience in various positions with defendant. Dkt. # 87-1, at 3, 7-9. "Usually, when courts discuss whether an individual has 'business experience,' they refer to the length of time a person has spent in a particular industry and weather, based on his or her employment duties, that person understood the scope of the bargain." Foster v. Mountain Coal Co., L.L.C., 61 F.Supp.3d 993, 1004 (D. Colo. 2014) (collecting cases). Here, plaintiff has nearly twenty years of experience in this industry, but her employment duties involve routine clean up and maintenance. Plaintiff's high school education, coupled with her janitorial experience, do not demonstrate that plaintiff's education and business experience render her a sophisticated individual who would easily understand the scope of the

bargain. This factor counsels against defendant's argument that the waiver was knowing and voluntary.

Regarding the third <u>Torrez</u> factor, the amount of time plaintiff had to deliberate before signing the agreement, plaintiff signed the settlement agreement on the same day she received it. Dkt. # 87, at 13-14; Dkt. # 96, at 12. Although defendant did not give plaintiff any deadline, plaintiff signed the agreement before the conclusion of the meeting in which she was first presented with the settlement agreement. Dkt. # 87, at 13-14; Dkt. # 96, at 12. The same-day signing of the settlement agreement counsels against the knowing and voluntary nature of plaintiff's acceptance of the agreement, even if no deadline was imposed. <u>See, e.g.</u>, <u>Loden v. Blue Cross and Blue Shield of Okla.</u>, No. 11-CV-0673-CVE-TLW, 2013 WL 5207238, at *4 (N.D. Okla. Sept. 13, 2013) (finding 45 days to review agreement sufficient period for deliberation); <u>Nikkel v. Wakefield & Assocs., Inc.</u>, No. 10-cv-02411-PAB-CBS, 2012 WL 5571058, at * 7 (D. Colo. Nov. 15, 2012) (19 days was sufficient amount of time to review release); <u>Ellison v. Lovelace Health Sys.</u>, No. Civ. 99-359 LFG/RLP, 2000 WL 33126910, at *7 (D.N.M. July 12, 2000) (employee given 21 days to consider release); <u>Anderson v. Lifeco Servs. Corp</u>, 881 F.Supp. 1500, 1504 (D. Colo. 1995) (18 days was a reasonable period of time to review release).

Regarding whether plaintiff knew that the agreement would have waived all of her claims, the Court concluded in its opinion and order regarding defendant's motion to dismiss that "plaintiff would have known that by signing the agreement she would waive her ability to bring claims related to her termination," thus satisfying the fourth <u>Torrez</u> factor. <u>See</u> Dkt. # 29, at 10. With respect to the fifth <u>Torrez</u> factor, whether plaintiff had the opportunity to consult an attorney, plaintiff acknowledges that she knew she could consult an attorney before signing the agreement, but elected

not to do so.  Dkt. # 87, at 14; Dkt. # 96, at 16. And, plaintiff had the benefit of union representation throughout the entire process.  This factor slightly favors defendant's argument because plaintiff was aware that she could consult an attorney.  See Torrez, 908 F.2d at 690 (explaining that factor weighed against knowing and voluntary waiver when employee neither consulted with an attorney nor received encouragement to consult with attorney prior to signing release).  However, because plaintiff did not actually consult an attorney before signing the agreement, this factor does not weigh in favor of defendant's argument with the same force as if plaintiff had actually consulted an attorney.

Regarding the sixth Torrez factor, whether plaintiff had the ability to negotiate regarding the terms of the settlement, the record demonstrates that plaintiff was not in a position to negotiate the terms and was presented with a take-it-or-leave it scenario.  Although plaintiff had union representation throughout the process, she was not in a position to negotiate the essential aspects of the agreement--that, in exchange for placement in a new position, plaintiff would waive her right to all claims against defendant related to her termination.  While plaintiff may have been able to negotiate some of the more  inconsequential aspects of the deal, the record demonstrates that plaintiff was faced with a scenario in which she was forced to choose between signing the release or continued unemployment, a so-called Hobson's choice.[3]  In such situations, a party's choice of the only remaining option cannot be said to be a voluntary and knowing choice.  Id.  As such, this factor weighs against defendant's argument.

---

[3]     A Hobson's choice is a situation in which one of the two presented options is obviously unacceptable, and a party has no real choice in the matter.  See Torrez, 908 F.2d at 690; Coventry v. U.S. Steel Corp., 856 F.2d 514, 524 (3d Cir. 1988).

Finally, the seventh <u>Torrez</u> factor, whether plaintiff received consideration in exchange for her waiver of all claims against defendant, favors defendant's argument that the waiver was knowing and voluntary.[4]  In exchange for the waiver of all claims against defendant, plaintiff received a new position with defendant.  This was not a position to which she was entitled before her termination because, pursuant to the terms of the collective bargaining agreement, plaintiff would have been laid off after failing the 180-day test because her original position was no longer available.   Thus, placement in another position is valid consideration in exchange for her waiver of claims against defendant.  This factor therefore favors defendant's argument that plaintiff's wavier was knowing and voluntary.

The Court also considers plaintiff's argument, although not among the <u>Torrez</u> factors, that plaintiff signed the agreement out of economic necessity because she had been out of work for six weeks prior to the agreement.  Some courts have found that economic duress can be considered as a factor in determining whether a party knowingly and voluntarily signed a release.  <u>Rutledge v. Int'l Bus. Mach. Corp.</u>, 1992 WL 189105, at *3 (10th Cir. Aug. 6, 1992)[5]; <u>Bittner v. Blackhawk Brewery & Casino LLC</u>, No. 03-CV-02274-MSK-PAC, 2005 WL 1924499, at *3 (D. Colo. Aug. 9, 2005). However, "economic pressure alone is insufficient to establish a claim of duress that would void an otherwise valid release."  <u>Nichols v. Dep't of Health, State of Colo.</u>, 1991 WL 268838, at *5 (10th Cir. Dec. 11, 1991).  Though not dispositive, this consideration weighs against defendant's argument

---

[4]     Plaintiff's response appears to assert an independent argument that the settlement agreement lacked consideration.  However, because the <u>Torrez</u> factors address consideration, the Court evaluates this argument as part of its <u>Torrez</u>-factor analysis.

[5]     This and other unpublished opinions are not precedential, but may be cited for their persuasive value.  <u>See</u> Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

because plaintiff had an economic motive in signing the settlement agreement--returning to work and receiving an income after nearly six weeks of unemployment.

Considering the <u>Torrez</u> factors and the totality of the circumstances, and viewing all facts in the light most favorable to plaintiff, the Court concludes that the settlement agreement did not constitute a knowing and voluntary waiver of all of plaintiff's claims against defendant resulting from her termination.  The <u>Torrez</u> factors are split, and the Court gives plaintiff the benefit of the doubt at the summary judgment stage that the settlement agreement was not an enforceable waiver of all claims against defendant.  As such, defendant should not be granted summary judgment on this basis.

**B.**

Defendant next asserts that it is entitled to summary judgment on plaintiff's discrimination claims, arguing that plaintiff fails to establish a prima facie showing or demonstrate pretext as to any of her claims.  Dkt. # 87, at 7-8.  Plaintiff responds that genuine factual disputes remain regarding whether plaintiff can establish a prima facie case or show pretext, precluding summary judgment.  Dkt. # 96, at 27-30.  Plaintiff asserts claims of discrimination based on race, sex, and disability under Title VII, § 1981, the ADA, and the OADA.   As plaintiff presents no direct evidence of discrimination under any theory, all of plaintiff's claims are subject to the <u>McDonnell Douglas</u> burden-shifting framework.  <u>See</u> <u>Kendrick v. Penske Transp. Servs., Inc.</u>, 220 F.3d 1220, 1225 (10th Cir. 2000) (Title VII and § 1981); <u>McCully v. Am. Airlines, Inc.</u>, 695 F.Supp.2d 1225, 1246 (N.D. Okla. 2010) (ADA and OADA).

> Under the <u>McDonnell Douglas</u> framework, the plaintiff must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination.  Once the plaintiff has established a prima facie case, [t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for its employment

14

action.  If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual.

Kendrick, 220 F.3d at 1226 (alteration in original) (internal quotation marks and citations omitted).

### i.

Plaintiff asserts claims of sex discrimination under both Title VII and the OADA.  Dkt. # 2, at 14, 19.  Defendant argues that plaintiff fails to make a prima facie case of sex discrimination, asserting that plaintiff was not qualified for the position and the circumstances do not demonstrate that defendant terminated plaintiff based upon her sex.  Dkt. # 87, at 23, 26-27.   Defendant also asserts that plaintiff cannot show that defendant's proffered reason for plaintiff's termination was pretextual.  Id. at 29.  Plaintiff's response is silent as to defendant's arguments about plaintiff's sex discrimination claim.[6]  See Dkt. # 96.

To establish a prima facie case of sex discrimination, a plaintiff must show that: (1) she is a member of a protected class, (2) she suffered an adverse employment action; (3) she was otherwise qualified for the position in question; and (4) she was treated less favorably than others not in the protected class.  Turner v. Pub. Serv. Co. of Colo., 563 F.3d 1136, 1142 (10th Cir. 2009) (Title VII); McCully, 695 F.Supp.2d at 1246 ("The Tenth Circuit has determined that a plaintiff's OADA claim fails if her federal discrimination claims fail.").   At the prima facie stage, a plaintiff satisfies her burden of showing she is qualified by presenting some credible evidence that she possesses the

---

[6]     In its reply to plaintiff's response, defendant argues that plaintiff has abandoned her sex discrimination claims by failing to address defendant's arguments for summary judgment in her response.  Dkt. # 106, at 10.  Although plaintiff does not respond to defendant's arguments about her sex discrimination claims, plaintiff does not expressly state her intent to abandon these claims.  As such, the Court considers the merits of defendant's argument.

objective qualifications necessary to perform the job at issue. E.E.O.C. v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1193 (10th Cir. 2000).

Plaintiff, a female, satisfies the first element of a prima facie case. She similarly satisfies the second element, identifying her termination from a hazardous waste maintenance position as an adverse employment action. However, plaintiff fails to show that she was otherwise qualified for the position in question. The record is replete with evidence that plaintiff was not qualified for her position, including the essential job duty of looking up chemicals in an online database and reading and understanding information about safety and remediation techniques, plaintiff's acknowledgment that she cannot read and understand long sentences, and plaintiff's inability to correctly identify a chemical and its remediation technique during the 180-day test. Dkt. # 87, at 10-11; Dkt. # 87-1, at 6; Dkt. # 87-6, at 2; Dkt. # 96, at 12-14. Plaintiff presents no credible evidence that she possess the objective qualifications necessary to perform the hazardous maintenance job.

And plaintiff also fails to show that she was treated less favorably than others co-workers who were not members of a protected class. Of six employees who sought to transaction into the hazardous waste maintenance position, plaintiff was the only employee who did not pass the 180-day test required for permanent placement in the position. Of the five other employees, two were women and three were men. Plaintiff's allegations that she was terminated based on sex is undercut by the number of women who were ultimately placed permanently in the same position.

Plaintiff's allegations that she was discriminated against due to her sex are not sustained by the evidence in the record, particularly given that plaintiff could not perform essential functions of the position and that defendant placed two women in the same position on a permanent basis. Plaintiff thus fails to establish a prima facie case of sex discrimination. And, even if plaintiff could

establish a prima facie case, she fails to demonstrate that defendant's stated non-discriminatory reason for terminating plaintiff--plaintiff's failure of the 180-day test and the unavailability of plaintiff's previous position--is a pretext.  "A showing of pretext does not require a plaintiff to offer any direct evidence of actual discrimination." Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1113 (10th Cir. 2007).  Rather,  "[a]n employee may show pretext based on 'weakness, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's claimed legitimate, non-discriminatory reason such that a rational trier of fact could find the reason unworthy of belief." Id. (quoting Morgan v. Hilti, 108 F.3d 1319, 1323 (10th Cir. 1997)).  Plaintiff has identified no such reason that would lead a trier of fact to conclude that defendant's proffered reason for plaintiff's termination was a pretext for sex discrimination.  As stated above, no evidence in the record suggests that defendant terminated plaintiff because she was a woman; thus plaintiff cannot show that defendant's proffered reason for plaintiff's termination was a guise for an adverse employment action motivated by plaintiff's sex.

Plaintiff fails to establish a prima facie case of sex discrimination or provide any evidence that defendant's proffered reason for plaintiff's termination was a pretext.  Defendant should thus be granted summary judgment on plaintiff's sex discrimination claim.

## ii.

Plaintiff asserts claims of race discrimination against defendant under Title VII, § 1981, and the OADA.  Dkt. # 2, at 14,16-17, 19.  Plaintiff asserts that defendant discriminated against her based on race by treating her differently and much less favorably than other co-workers who were not members of a protected class.  Id. at 15, 17, 20.  Defendant argues that plaintiff has failed to establish a prima facie case of race discrimination, asserting that plaintiff fails to identify any

disparate treatment based on race and that plaintiff provides no evidence suggesting that defendant's reason for terminating plaintiff was pretextual.  Dkt. # 87, at 26, 29.  Plaintiff's response is silent as to defendant's arguments that it is entitled to summary judgment on plaintiff's race discrimination claims.[7]  See Dkt. # 96.

To establish a prima facie case of race discrimination based on disparate treatment, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) disparate treatment among similarly situated employees occurred.  Orr v. City of Albuquerque, 417 F.3d 1144, 1149 (10th Cir. 2005) (Title VII); Drake v. City of Fort Collins, 927 F.3d 1156, 1162 (10th Cir. 1991) (§ 1981 claims evaluated under same standard ast Title VII); McCully, 695 F.Supp.2d at 1246 (OADA claims evaluated under same standard as Title VII).

Plaintiff satisfies the first element of a prima facie case as an African-American.  And she satisfies the second element because her termination qualifies as an adverse employment action.  But plaintiff fails to satisfy the third element--that she was treated differently than similarly situated employees.  The record contains no evidence that supports the conclusion that plaintiff was treated differently than similarly situated employees.  Plaintiff was one of six employees who served as a building cleaner for defendant and attempted to transition to a hazardous waste maintenance position when defendant outsourced the building cleaner positions.  Of the five other employees, four were

---

[7]     Plaintiff's response to defendant's motion for summary judgment is also silent regarding defendant's arguments for summary judgment on plaintiff's race discrimination claims. Dkt. # 96.  Defendant asserts in its reply that plaintiff also abandoned her race discrimination claims by not addressing them in her response to defendant's motion for summary judgment. Dkt. # 106, at 10.  As stated with respect to plaintiff's sex discrimination claims, plaintiff did not expressly abandon her claims and the Court considers the merits.

African-American and one was Caucasian.  The evidence demonstrates that all employees received the same training for the 180-day test.  Plaintiff was the only employee who did not successfully pass the test and secure permanent employment as a hazardous waste maintenance person.

The record simply does not support plaintiff's allegation that she suffered disparate treatment because of her race and that her termination was based upon her membership in a protected class. Indeed, the only evidence in the record of plaintiff's race ever being mentioned in the workplace is her own complaint to a supervisor that she was not being prepared adequately for the 180-day test because she was a black female.  The record instead supports the conclusion that plaintiff was terminated because she failed the 180-day test and she could not be returned to her previous position because it no longer existed.  As such, plaintiff has failed to state a prima facie case of race discrimination.  Plaintiff also fails to demonstrate that defendant's proffered reason for her discharge--that she failed the 180-day test and her old position had been eliminated--was a pretext. As discussed with respect to plaintiff's sex discrimination claim, the record reveals no evidence indicating that defendant's non-discriminatory reason for discharge is suspect or attempts to cover a discriminatory motive.  Summary judgment should thus be granted to defendant on plaintiff's race discrimination claims.

### iii.

Plaintiff also asserts a claim of disability discrimination under the ADA for defendant's failure to accommodate her disability when she took the 180-day test. Dkt. # 2, at 23-25. Defendant asserts that plaintiff has failed to establish a prima facie case of disability discrimination and asserts that plaintiff also fails to show pretext. Dkt. # 87, at 22, 29. Plaintiff responds that genuine disputes

of material fact exist regarding her disability discrimination claim, rendering summary judgment inappropriate. Dkt. # 96, at 27.

"Under the ADA, discrimination is defined to include 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" Selenke v. Med. Imaging of Colo., 248 F.3d 1249, 1261 (10th Cir. 2001) (quoting 42 U.S.C. § 12112(b)(5)(A)).  "'In order to establish a prima facie case of failure to accommodate in accordance with the ADA, a plaintiff must show that (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability.'"  Allen v. SouthCrest Hosp., 455 F. App'x 827, 830 n.2 (10th Cir. 2011) (quoting Kotwica v. Rose Packing Co., Inc., 637 F.3d 744, 747-48 (7th Cir. 2011)).

Plaintiff asserts that she should have received additional training but no evidence suggests that plaintiff made such a request based on her disability, instead complaining only that she was not being adequately prepared because she was a black female.  See E.E.O.C. v. C.R. England, Inc., 644 F.3d 1028, 1049 (10th Cir. 2011) (explaining that employee must made an adequate request for accommodation to put employer on notice and that the request for accommodation should be sufficiently direct and specific).  Nothing in the record can be construed as a direct and specific request for additional training based on plaintiff's learning disability.  To the extent that plaintiff argues that defendant failed to accommodate her based on her claims that she felt groggy due to a colonoscopy the day before the test, a colonoscopy does not qualify as a disability for a number of reasons, including that the ADA does not encompass temporary impairments. See Toyota Motor

Mfg. v. Williams, 534 U.S. 184, 198 (2002).  The Court thus considers only plaintiff's request to take the exam orally due to her alleged dyslexia as the request for accommodation.

First, plaintiff asserts that she suffers from dyslexia, which she argues qualifies as an ADA-covered disability.  The ADA defines a disability as "a physical or mental impairment that substantially limits one or major life activities of such individual; [] a record of such an impairment; or [] being regarded as having such an impairment." 42 U.S.C. § 12102(1).  To establish that she is disabled under § 12102(1)(A), a plaintiff has the burden to show that "(1) [s]he has an impairment that (2) substantially limits (3) a major life activity." Smothers v. Solvay Chems., Inc., 740 F.3d 530, 545 (10th Cir. 2014).  The first and third elements are matters of law for the Court to decide, but the second requirement is a question of fact that must be submitted to a jury if there is a genuine dispute.  Id.; Doebele v. Sprint/Utd. Mgmt. Co., 342 F.3d 1117, 1129 (10th Cir. 2003).

Plaintiff asserts that she suffers from dyslexia, and has suffered from this impairment for over thirty years.  Dkt. # 96, at 10.  Plaintiff identifies a note from her doctor stating that she suffers from dyslexia and requires oral exams.[8]  Dkt. # 102, at 133.  She also attests that she cannot read long sentences, has trouble reading restaurant menus, and sometimes cannot read road signs.  Id. at 41-42.  The evidence regarding plaintiff's dyslexia and its resulting limitations sufficiently establish that she suffers from an impairment that substantially limits a major life activity, i.e. her dyslexia substantially limits her ability to read.  See Cunningham v. Univ. of N.M. Bd. of Regents, 531 F.

---

[8]   Defendant challenges the probative value of this note, asserting that plaintiff has presented no evidence of her dyslexia from a doctor qualified to make such a diagnosis. Dkt. # 87, at 23.  But the Court considers this as evidence of plaintiff's disability at the summary judgment stage, viewing all facts in the light most favorable to plaintiff.

App'x 909, 919 n.12 ("Learning and reading are explicitly listed as 'major life activities' under 42 U.S.C. § 12102(2)(A).").  Plaintiff thus demonstrates that she has a disability.

A qualified individual is "an individual [who], with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  The evidence in the record demonstrates that plaintiff is not a qualified individual because she cannot perform the essential functions of the employment position, with or without an accommodation.  Plaintiff's only requested accommodation for her disability was the oral administration of tests, but plaintiff also acknowledges that an essential aspect of the hazardous waste maintenance position is the ability to read and understand contents in an online database regarding specific chemicals.  Dkt. # 87, at 10; Dkt. # 87-1, at 6; Dkt. # 96, at 12.  Even given plaintiff's desired and requested accommodation, plaintiff would not be able to carry out the essential functions of the position because she would not be able to sufficiently utilize the online database on a day-to-day basis.  Plaintiff is not a qualified individual with a disability, thus failing to establish a prima facie case of failure to accommodate.  The Court also notes, with respect to the second two elements, that although some evidence in the record indicates that defendant was aware of plaintiff's disability based on her conversations with her supervisor and notes in her personnel file, she cannot satisfy the third element because defendant provided her the accommodation which she requested--oral administration of the 180-day test.

Finally, even if plaintiff can establish a prima face case of failure to accommodate, she fails to demonstrate pretext.  Defendant accommodated plaintiff in the manner she requested, but even in the absence of an accommodation, no evidence supports the conclusion that defendant offered

false reasoning for its actions, intending only to cover a discriminatory motive.  As such, defendant

should be granted summary judgment of plaintiff's disability discrimination claim.

## C.

Defendant finally asserts that it is entitled to summary judgment on plaintiff's retaliation

claims, arguing that plaintiff fails to make a prima facie case of retaliation because no evidence

demonstrates that plaintiff engaged in a protected activity nor that a causal connection exists

between any alleged activity and plaintiff's termination.  Dkt. # 87, at 8.  Plaintiff responds that she

has established a prima facie case of retaliation and asserts that she has demonstrated the defendant's

proffered reason for her termination was a pretext.  Dkt. # 96, at 27-30.

Plaintiff asserts retaliation claims under § 1981 and the ADA.  To make a prima facie case

of retaliation, a plaintiff must show that: (1) she engaged in protected opposition to discrimination;

(2) that a reasonable employee would have found the challenged action materially adverse; and (3)

a causal connection exists between the opposition and the adverse action.  Twigg v. Hawker

Beechcraft Corp., 659 F.3d 987, 998 (10th Cir. 2011) (§ 1981 retaliation); Selenke, 248 F.3d at 1264

(ADA retaliation).  An employee may establish causation by showing that the adverse employment

action occurred soon after the protected activity.  Annett v. Univ. of Kan., 371 F.3d 1233, 1239-40

(10th Cir. 2004); Burrus v. Utd. Tel. Co. of Kan., Inc., 683 F.2d 339, 343 (10th Cir. 1982).  "Unless

there is very close temporal proximity between the protected activity and the retaliatory conduct,

the plaintiff must offer additional evidence to establish causation."  O'Neal v. Ferguson Constr. Co.,

237 F.3d 1248, 1253 (10th Cir. 2001).

First, the Court concludes above that plaintiff fails to establish a prima facie case of

discrimination, whether based on sex, race, or disability.  But, for the purposes of plaintiff's

retaliation claims, the question is not whether she was subjected to discrimination, but whether plaintiff had a reasonable good-faith belief she was. Hertz v. Luzenac Am., Inc., 370 F.3d 1014, 1015-16 (10th Cir. 2004). An informal complaint to a superior about potential discrimination constitutes protected activity or opposition. See Pastran v. K-Mart Corp., 210 F.3d 1201, 1205 (10th Cir. 2000). Although the Court has its doubts about whether plaintiff had a reasonable, good faith belief that she was being discriminated against based on her race and gender, the Court assumes for the purposes of this analysis that she did have such a good faith belief. As such, her complaint to her supervisor that she was not being adequately prepared for the 180-day test because she was a black female sufficiently satisfies the first element of her § 1981 retaliation claim. The Court notes that plaintiff makes no allegations that she ever complained to any supervisors that she was being treated differently due to her alleged disability or otherwise demonstrates the she engaged in any protected opposition to discrimination based on her disability. Plaintiff thus cannot satisfy the first element of a prima facie case of retaliation under the ADA.

With respect to her § 1981 retaliation claim, plaintiff also satisfies the second element because a reasonable employee would find the challenged action--termination--materially adverse. However, plaintiff fails to establish causation between her complaints about allegedly discriminatory treatment and her subsequent termination. Plaintiff complained to Gilmore, her supervisor, that she was not being adequately prepared for the 180-day test because she was a black woman. Plaintiff subsequently failed the 180-day test and was terminated. Although plaintiff asserts that these two events are causally related, the record does not support such a conclusion. First, plaintiff could not recall precisely how long after her complaint about inadequate preparation that she failed the 180-day test; however, plaintiff made her complaints during the training period leading up to the test.

Dkt. # 87, at 15.  Although there is some temporal relationship between the two events, there is no additional evidence supporting a causal connection, including any allegation that Ray Richardson, who administered plaintiff's exam and determined that she failed, was aware that plaintiff had made complaints about inadequate preparation due to her status as a black female to Richard Gilmore, her supervisor. The evidence in the record does not support the conclusion that plaintiff's complaints about inadequate test preparation based on her race and gender were the proximate cause of plaintiff's termination.  Plaintiff fails to establish this element and thus fails to make a prima facie case of retaliation.

And, as the Court has stated in reference to plaintiff's other claims, even if plaintiff were able to establish a prima facie case of retaliation under either the ADA or § 1981, she provides no evidence that demonstrates that defendant's non-discriminatory explanation for plaintiff's termination--that she failed a qualifying test and defendant could not place plaintiff back in her original position--was a pretext.  The record simply contains no evidence that defendant's explanation for plaintiff's termination was nothing more than a guise intended to cover defendant's discriminatory motive.  As such, defendant should be granted summary judgment on plaintiff's retaliation claims.

## IV.

In sum, the Court concludes defendant is not entitled to summary judgment based upon the settlement agreement, but concludes that summary judgment is appropriate as to each of plaintiff's individual claims because plaintiff has failed to establish a prima facie case or demonstrate pretext. The Court notes that federal anti-discrimination laws are designed to protect individuals from discrimination in the workplace based on immutable characteristics, but are not designed to provide

plaintiffs a vehicle to pursue meritless federal claims based solely on a plaintiff's membership in a protected class.  The Court evaluates all claims equally, but advises plaintiff that federal anti-discrimination claims should be based in fact and should not be merely an exercise in checking all the boxes of protected classes to which plaintiff may belong.

**IT IS THEREFORE ORDERED** that Defendant American Airlines, Inc.'s Motion for Summary Judgment and Brief in Support (Dkt. # 87) is **granted**.

**IT IS FURTHER ORDERED** that defendant's motion in limine (Dkt. # 90), plaintiff's motion in limine (Dkt. # 92), Plaintiff's *Unopposed* Motion for Leave to File Second Amended Deposition and Interrogatory Designations (Dkt. # 118),  Defendant's Unopposed Motion for Extension of Time (Dkt. # 119), Defendant American Airlines, Inc.'s Objections to Plaintiff's Deposition, Interrogatory, and Request for Admission Designations (Dkt. # 122), and Plaintiff Anna Marie Pittman's Objections to Defendant American Airlines' Deposition Designations (Dkt. # 125) are **moot**.

**DATED** this 2nd day of June, 2016.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE